556 So.2d 974 (1990)
INTRACOASTAL SEAFOOD CO., INC., Plaintiff-Appellant,
v.
Johnny SCOTT, Defendant-Appellee.
No. 88-1046.
Court of Appeals of Louisiana, Third Circuit.
February 7, 1990.
*975 E. Wade Shows, Baton Rouge, for plaintiff-appellant.
Gordon Sandoz, II, Abbeville, for defendant-appellee.
Before DOUCET, KNOLL and KING, JJ.
KNOLL, Judge.
Intracoastal Seafood Co., Inc. (Intracoastal) appeals the dismissal of its tort action against its former manager, Johnny Scott, to recover damages for property and funds allegedly misappropriated by Scott between July 1985 and April 1986. The trial court dismissed Intracoastal's lawsuit, filed on July 22, 1987, on the ground that the action was not filed within one year of the date Intracoastal discovered the fraudulent conduct.
Intracoastal contends that the trial court erred in sustaining Scott's peremptory exception of prescription, arguing that the doctrine of contra non valentem suspended the prescriptive time. We affirm.

FACTS
We glean the following brief facts from the pleadings filed and the limited testimony presented at the hearing on Scott's peremptory exception.
From July 1985 to April 1986, Intracoastal employed Scott as the general manager of its wholesale and retail facility for the purchase of shrimp. In April 1986, the exact day is not established in the record, Scott gave Intracoastal an ultimatum of either firing two other employees or he *976 would leave its employ. When the two employees were not fired, Scott terminated his employment with Intracoastal. Immediately thereafter, Horace Womack succeeded Scott as Intracoastal's general manager.
Womack, the only person to testify at the hearing on the peremptory exception, told the trial court that within the first two months of his employment (sometime in June 1986 by our calculation) with Intracoastal, he felt something was amiss with the financial dealings of the company, particularly, certain checks which appeared in the company's bank statement. As a result of his concerns, Womack asked the Vermilion Parish Sheriff's Office to investigate the situation. As a result of that investigation, bills of information were filed on May 13, 1987, charging Scott with two counts of forgery. The record does not reflect the disposition of those criminal charges.
On July 22, 1987, one year and three months after the termination of Scott's employment, Intracoastal filed this lawsuit against Scott seeking damages of $159,389.13 for his conversion of corporate income and assets.

PRESCRIPTION
Intracoastal contends that although more than a year elapsed between Scott's termination and the filing of this lawsuit, Intracoastal commenced legal action within one year of the discovery of Scott's acts of fraud and ill practices.
Delictual actions in Louisiana are subject to a liberative prescription of one year, which commences to run from the day injury or damage is sustained. LSA-C.C. Art. 3492. Jurisprudence has interpreted this rule to mean that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Lott v. Haley, 370 So.2d 521 (La. 1979). When it is not obvious from the face of the petition, the burden of proving a tort action has prescribed rests upon the defendant or party pleading prescription. Pearson v. Hartford Accident & Indemnity Company, 281 So.2d 724 (La.1973). Once it is proved that more than one year has elapsed between the time the tort occurred and the filing of suit, however, the burden shifts to the plaintiff to prove an interruption or suspension of prescription. Dixon v. Houck, 466 So.2d 57 (La.App. 2nd Cir.1985). One such vehicle available to a plaintiff is the doctrine of contra non valentem.
In Strata v. Patin, 545 So.2d 1180, 1189 (La.App. 4th Cir.1989), writ denied, 550 So.2d 618 (La.1989), our brethren of the Fourth Circuit stated:
"In Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319, 1321-1322 (La.1979), the Louisiana Supreme Court described the four categories of situations in which the principle of contra non valentem agere nulla currit praesciptio [sic] is applied to prevent the running of liberative prescription: 1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting upon the plaintiff's action; 2) where there was some conditions coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; 3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; and 4) where the cause of action is not known or reasonably knowable by plaintiff, even though his ignorance was not induced by defendant."
Intracoastal relies on the third and fourth exceptions enumerated, contending that Scott's fraud and embezzlement prevented it from detecting his ill practices.
One of the defenses available to a plaintiff who files suit tardily is the discovery rule which suspends the running of prescription during the period in which his cause of action was not known or reasonably knowable to him. Strata, supra. In that instance, the rule provides that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, as long as *977 such ignorance is not willful and does not result from his own neglect. Griffin v. Kinberger, 507 So.2d 821 (La.1987). This does not mean that a lack of actual notice of a cause of action will suspend prescription, as constructive notice is sufficient to commence the running of prescription. Id., at 823.
Constructive knowledge or notice sufficient to commence the running of prescription, however, requires more than a mere apprehension that something might be wrong. Prescription will commence only when plaintiff knew or should have known by exercising reasonable diligence that tortious conduct occurred and that certain parties are responsible. In Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285, 287 (1970), the Supreme Court stated:
"Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription." (Footnote omitted.)
In the present case, the only date mentioned in Intracoastal's petition for damages is the April 1986 date of Scott's termination of employment. However, just because Scott's employment terminated in April 1986 does not, as advocated by Scott, suffice to show that prescription began to run at that time. After carefully examining Intracoastal's petition, we find that there is no hint in the petition of when Intracoastal learned of Scott's alleged embezzlement or exactly when the alleged embezzlement actually occurred. Accordingly, we find that it is not obvious on the face of the petition that Intracoastal's tort action prescribed. Therefore, it was Scott's burden to establish when the prescriptive period began.
The sole evidence before the trial court on the hearing on the prescriptive issue was Womack's testimony. From Womack's testimony we learn that by June 1986 he questioned certain checks in the company's bank statement, e.g., one made payable to Boss Hog. As a result, Womack asked the Vermilion Parish Sheriff's Office to investigate. We also know that the Sheriff's investigation culminated when formal charges were brought against Scott on May 13, 1987, for forgery.
On these facts the trial court concluded that by sometime in June of 1986, Intracoastal had constructive knowledge or notice sufficient to commence the running of prescription. We agree.
Initially, we find that Scott carried his burden of proving the date on which prescription began, namely June 1986. Likewise, there was no testimony from Intracoastal either showing that the criminal investigation involved individuals other than Scott or that it was not until later that Scott became the target of the criminal investigation. Moreover, if Scott concealed these transactions while he was in Intracoastal's employ, the record shows that he did not continue to conceal his alleged misdeeds after the termination of his employment, and no testimony was adduced explaining his scheme of concealment or showing the complexity of his fraud. Furthermore, the evidence shows that all investigation stopped at least in May 1987, if not sooner, because criminal charges were filed against Scott at that time. In this regard, we find that Intracoastal failed to rebut the evidence that the prescriptive period commenced sometime in June 1986. Accordingly, it is clear that Intracoastal's action filed in July 1987 was initiated later than one year after Intracoastal had constructive knowledge of Scott's alleged tortious activity.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Intracoastal.
AFFIRMED.