liPER CURIAM.
When defendant, New Hampshire Insurance Company, refused to abide by the terms of a compromise and settlement in which it agreed to pay court costs and its $25,000 policy limits, plaintiff filed a Rule to Enforce Settlement. Believing that the record contained legally inadequate written evidence of an enforceable compromise and settlement, the trial court denied the rule. We grant writs and reverse, finding compliance with all legal requisites as to form.
On December 16, 1992, plaintiff, Oren J. Michot, was driving his 1979 Chevrolet pickup truck West on Louisiana Highway 114 in Mansura, Avoyelles Parish, when suddenly appeared before him a 1980 Chevrolet pickup truck driven by defendant, Orlin Mose, which was reversing, eastbound in plaintiffs westbound lane, in an effort to enter a private driveway. When plaintiff stopped to avoid a collision Uwith the reversing vehicle, he was rear-ended by a 1970 Chevrolet Caprice driven by defendant, Hector Batiste, Jr.
Plaintiff filed suit December 12, 1993, against Orlin Mose and his insurer, Economy Fire and Casualty Company, and Hector Batiste, Jr. and his liability insurer, New Hampshire Insurance Company.
The suit was slow in developing. Eventually, on February 28,1994, counsel for Economy and its insured, Orlin Mose, offered to settle the suit for its $10,000.00 policy limits in exchange for a dismissal of all claims against Economy and its insured. The offer was conveyed by Economy’s counsel in correspondence to plaintiffs counsel.
Less than two weeks later, on March 8, 1994, defense counsel for Mr. Batiste and New Hampshire Insurance Company conveyed a similar offer, noting his authorization to offer the $25,000.00 policy limits contingent upon Batiste’s and New Hampshire Insurance Company’s dismissal by plaintiff, Mi-chot, and his employer. By correspondence dated March 17, 1994, plaintiffs counsel advised that his client would sign a full release of the two insurers and their insureds, in exchange for payment of the combined policy limits of $35,000.00. In addition, plaintiffs counsel noted that the workers’ compensation carrier had agreed to waive collection on 50% of its subrogation claim for the $3,156.07 indemnity benefits and $3,363.40 in medical payments, leaving a balance of $31,740.27 owed plaintiff by the two insurers.
By correspondence dated March 18, 1994, addressed to Economy Fire and Casualty and its insured, Orlin Mose, counsel for New Hampshire Insurance Company confirmed the agreement of the three parties. The March 18 communication, a copy of which was issued to plaintiffs counsel, indicated that New ^Hampshire Insurance Company and its insured:
“have compromised and settled all disputes for $35,000 with the understanding that Elder Wood Preserving Company, the employer, is to receive fifty percent of compensation and medical[s] paid or $3,259.74 and a full release. [New Hampshire Insurance Company is] to prepare all settlement documents including a three way release document.
“Please furnish me with a check payable to [plaintiff] Oren Michot and his attorney ... in the amount of $10,000. We understand that [New Hampshire] will pay its $25,000 limits.”
The question presented is whether the facts and law permit New Hampshire Insurance Company to fail to comply with its obligation. The insurer claims that the parties had reached no more than a “tentative” settlement agreement and that it timely withdrew its consent. In brief, they maintain that the parties and law alike contemplated reduction of the “tentative” settlement agreement to a contract to be signed by all parties concerned before any consequences might flow from the multi-party agreement “tentatively” reached by the parties.
According to New Hampshire, when its attorney called plaintiffs employer for approval of the settlement, the insurer learned for the first time that its insured and plaintiff were co-employees and that plaintiff was arguably in the course and scope of his employment at the time of the accident, permitting New Hampshire to immediately withdraw its *443 consent to the proposed settlement agreement.
Conceding the difficulties presented, the trial judge denied plaintiffs rule on the basis that the record contained nothing in -writing to suggest that the workers’ compensation matter had been settled. The esteemed trial judge pointedly noted that “there was a good understanding that both Economy and New Hampshire were going to put up their policy limits, and that Mr. Michot was to release his worker’s compensation claims.” The trial judge evidently concluded that correspondence from |4the workers’ compensation insurer’s claims adjuster of March 16, 1994,[1] combined with New Hampshire’s counsel March 18, 1994, confirmation, were insufficient to close the deal because plaintiffs employer did not separately indicate his intent to settle in writing.
We conclude that the requisite formalities for a transaction or compromise were filled. LSA-C.C. art. 3071 provides as follows:
Transaction or compromise, definition
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
IsThe requirement that a settlement agreement be in writing and signed by two or more parties does not mean that the agreement must be contained in one document. It is sufficient that there be separate interlocking writings which in combination indicate an agreement directed toward preventing or putting an end to a lawsuit. Felder v. Georgia Pacific Corp., 405 So.2d 521 (La.1981); Anderson-Dunham, Inc. v. Hamilton, 564 So.2d 823 (La.App. 1st Cir.1990), writ denied, 569 So.2d 963 (La.1990).
Turning again to the facts subjudice, Economy’s February 28, 1994, offer to settle the suit for its $10,000.00 policy limits was accepted by plaintiffs offer to sign a release of Economy and its insured, Orlin Mose. New Hampshire Insurance Company’s March 8, 1994, offer to settle for its policy limits in exchange for its and the employer’s release was accepted by plaintiff March 17, 1994, and confirmed by New Hampshire March 18, 1994, by which time the terms of the tripartite agreement were known and approved by all parties to this proceeding. Since the terms of the agreement had been properly perfected in writing, no further formalities were required. The deal was done.

MISTAKE OF FACT

New Hampshire’s last line of defense is that it agreed to settle with plaintiff not knowing that its insured may have been in *444 the course and scope of his employment.[2] According to New Hampshire, this error vitiated whatever consent it might have given insofar as it affected the cause of the compromise agreement. See LSA-C.C. arts. 1949 and 1950.
We find no merit to this contention. At the hearing on the rule (if not before), the employer recanted any initial misgivings when its only witness to testify | ^indicated, consistent with its adjuster’s March 16, 1994, correspondence to counsel for New Hampshire, that it did agree to the 50% reimbursement contemplated by the tripartite agreement. Therefore, New Hampshire’s alternate ground for reversal too lacks merit. “A party may not avail himself of his error if the other party is willing to perform the contract as intended by the party in error.” LSA-C.C. art. 1951.

CONCLUSION

From the moment New Hampshire’s counsel received the defense file, his instructions were to proceed with settlement. No discovery was expected of him, and no investigation had been carried out by his client. Following these instructions, counsel for New Hampshire entered into a compromise agreement which was binding as its terms were known and perfected in compliance with the requisite formalities.

DECREE

For the foregoing reasons, the judgment on the rule is reversed. Plaintiff is entitled to, and defendants are east for, the sums agreed to by compromise and settlement, plus interest from the date of the rule’s filing, less a credit for the workers’ compensation carrier’s reduced subrogation claim. Defendants to pay all cost.
WRIT GRANTED MADE PEREMPTORY.

. Mr. Howard "Trey” Gist, III Attorney at Law P.O. Box 1871 Alexandria, LA 71309-1871 RE: Claimant: Oren Michot Employer: Elder Wood Preserving Co. D/A: 12/16/92 Dear Trey: I spoke to Kerry Spruill and told him we would be willing to waive 50% of our compensation lien on this case. He advised he will get with his client regarding this. Attached is a copy of the Employer's Report of Injury. We paid disability benefits to Mr. Mi-chot from 2/12/93 thru 9/2/93 for a total of 29 weeks at a compensation rate of $108.83 total-ling $3,156.07. His average weekly wage was computed to be $163.25. We paid a total of $3,363.40 in medical expenses. Total amount paid out on this claim is $6,519.47. We expect to be reimbursed 50% or $3,259.74 and obtain a full release of any claims. You advised that you would work-up the settlement papers on our behalf. If you need any additional information, please advise and thank you for your assistance in this matter. Very truly yours, /s/ Lori C. Francis Lori C. Francis Claims Adjuster Enclosure

. The parties were unwilling to stipulate on this issue at the hearing on the Rule.