934 So.2d 827 (2006)
Shane H. COLLINS, Sam H. Collins, and Barbara K. Collins
v.
MIKE'S TRUCKING COMPANY, INC., Star Insurance Company, Dwight L. Daigle, and Nutmeg Insurance Company.
Richard Andrew Jackson
v.
Mike's Trucking Company, Inc., Star Insurance Company, Dwight L. Daigle, and Nutmeg Insurance Company.
No. 2005 CA 0238, 2005 CA 0239.
Court of Appeal of Louisiana, First Circuit.
May 5, 2006.
Rehearing Denied June 30, 2006.
*829 Sean D. Fagan, Locke Meredith, Baton Rouge, for Plaintiffs/Appellees, Shane H. Collins, Sam H. Collins, Barbara K. Collins, and Richard A. Jackson.
Stephen C. Carleton, James E. Moore, Jr., Bridget B. Denicola, Baton Rouge, for Cross-Claimants/Appellees, Nutmeg Insurance Co. and Twin City Fire Insurance Co.
Patrick J. Briney, Richard R. Montgomery, Lafayette, for Intervenor/Appellant, Star Insurance Company.
Before: CARTER, C.J., DOWNING and GAIDRY, JJ.
CARTER, C.J.
These consolidated cases arose out of a motor vehicle accident. The intervenor/appellant, Star Insurance Company ("Star"), appeals three judgments rendered after a four-day jury trial resulting in a multi-million dollar award against Star's insureds, Mike's Trucking Company, Inc. and Dwight L. Daigle ("Mike's Trucking" and "Daigle"), who have not appealed or answered the appeal. For the following reasons, we affirm the trial court's judgments.

FACTUAL AND PROCEDURAL BACKGROUND
In January 2000, Shane H. Collins and Richard A. Jackson, both employees of Dixie Electric Membership Company ("DEMCO"), were injured when the truck they were occupying was rear-ended by a truck owned by Mike's Trucking and driven by its employee, Daigle. Both Collins and Jackson were seriously injured; Collins suffered permanent brain damage requiring constant care and supervision. Collins and his parents filed suit against Mike's Trucking, Daigle, Star (the liability carrier for Mike's Trucking), the uninsured/underinsured motorist carrier for DEMCO, Nutmeg Insurance Company, and the excess carrier for DEMCO, Twin City Fire Insurance Company (collectively referred to as the "UM carriers"). Jackson later filed suit against the same defendants, and the two cases were consolidated. The UM carriers answered the suits and filed cross-claims against Star, Mike's Trucking, and Daigle. Additionally, Louisiana Workers' Compensation Corporation (the "WC carrier") intervened to pursue its subrogation rights for reimbursement of workers' compensation benefits and *830 medical expenses paid to DEMCO's employees, Collins and Jackson.[1]
As the litigation progressed, Daigle and Mike's Trucking stipulated that they were 100% at fault for the accident, leaving the amount of damages as the only issue for trial. In December 2001, a series of letters were exchanged between counsel for plaintiffs (Collins, his parents, and Jackson) and counsel for defendants (Star, Mike's Trucking and Daigle), wherein the parties discussed settlement. Each letter contained an offer regarding the money damages as well as language regarding indemnity provisions. Responses to each piece of correspondence had some portion marked out or stricken by one of the parties. Settlement documents were drafted, but never signed. In January 2002, Star, Daigle and Mike's Trucking filed a motion to enforce settlement, relying on the series of letters as evidence of a compromise. After a hearing in which parol evidence was refused, the trial court denied the motion to enforce the settlement, finding that the letters did not reflect that a settlement had been perfected. The trial court indicated that its ruling was a final judgment; however, the record does not contain any written judgment denying the motion. No writ was ever taken from this trial court ruling.
In January 2002, the UM carriers paid the Collins plaintiffs $10,000,000 in full settlement of their UM claims. In the UM settlement documents, the plaintiffs assigned their rights by subrogation to the UM carriers, recognizing and reserving the UM carriers' previously filed cross-claims against Star, Mike's Trucking, and Daigle.[2] Shortly thereafter, also in January 2002, Star tendered the balance of its $1,000,000 policy limits, plus interest, to the plaintiffs via a concursus proceeding. Jackson settled his claims with the UM carriers in November 2002.[3] Star was subsequently dismissed with prejudice from the consolidated actions, including the cross-claims; however, the UM carriers and the plaintiffs specifically reserved their claims against Star's insureds, Mike's Trucking and Daigle. Star then sought to intervene in the actions to unite with Mike's Trucking and Daigle in resisting plaintiffs' claims and the UM carriers' cross-claims. Star was ultimately allowed to intervene in February 2003, pursuant to a stipulation between the parties.[4]
The Collins case was tried on the issue of damages in March 2003, and the jury returned a verdict awarding the Collins plaintiffs a total of $16,555,000. The parties stipulated that the Jackson case had a value of $1,200,000. Final judgments were signed on June 16, 2003, against Mike's Trucking and Daigle in accordance with the Collins jury verdict and the Jackson stipulation, and further recognizing the UM carrier's cross-claims and a credit due Mike's Trucking and Daigle for the *831 amount tendered by Star prior to trial.[5] Star was not cast in any judgment.
Before the judgments were signed, Star, Daigle, and Mike's Trucking filed a motion "to establish appropriate credit and/or motion to determine form of judgment." After a hearing in May 2003 on the motion, a third judgment was signed on June 17, 2003, wherein the trial court denied Star's motion, ruling that Star lacked "the procedural capacity to demand a credit for any payment made by [the UM carriers or the WC carrier] against any amounts awarded in the Final Judgments rendered in this matter." Additionally, the trial court ruled that the UM carriers did not waive their subrogation rights when they settled with the plaintiffs prior to trial; thus, Mike's Trucking and Daigle were not entitled to a credit for the amounts paid by the UM carriers or the WC carrier. Star, Daigle, and Mike's Trucking then filed a motion for devolutive appeal from all three June judgments. Star also filed an ex parte motion to reset a subpoena deadline, attempting to discover an alleged post-trial agreement between plaintiffs, the UM carriers, Daigle, and Mike's Trucking, regarding a possible assignment of rights and release. The trial court took up both matters (the motion for appeal and the motion to reset subpoena deadline) on August 11, 2003.
At the hearing on the motions, the trial court observed that the alleged assignment of rights agreement had not been signed by all of the parties and the assignment of rights was irrelevant to the ultimate question of whether Star was entitled to an appeal of the June judgments. The trial court also found that pursuant to the stipulation regarding Star's intervention, Star had been allowed to participate in the trial only as a courtesy to insure a fair trial (in anticipation of a potential bad faith claim), and that Star did not have any right to participate in the proceedings after the trial, including appeal. The trial court, however, granted an appeal to Daigle and Mike's Trucking. The trial court signed a judgment reflecting that Star did not have any rights on appeal. Star filed a supervisory writ with this court, which we granted in part and denied in part, essentially ruling that Star had a right to appeal the June judgments.[6] The Supreme Court denied the plaintiffs' and UM carriers' writ application for review of Star's right to appeal.[7] On remand, the trial court granted Star's motion for devolutive appeal from the three June 2003 judgments. However, Daigle and Mike's Trucking did not pursue an appeal.[8]
Next, the plaintiffs and UM carriers filed a joint motion in this court to dismiss Star's appeal. We denied the motion to dismiss in line with our previous writ action.[9] Thereafter, the Supreme Court denied *832 the plaintiffs' and UM carriers' writ application for review of our ruling on the motion to dismiss, thereby maintaining Star's right to appeal. See Collins v. Mike's Trucking Co., Inc., 05-1459 (La.12/16/05), 917 So.2d 1111.[10] No other parties have appealed or answered Star's appeal.

LAW AND ARGUMENT
Star raises eight assignments of error, grouped for ease of discussion by issue as follows:

Compromise Agreement (Assignment of Error Numbers 1 & 2)
Star argues that the trial court erred in its interlocutory ruling made in January 2002 (over one year prior to trial), wherein it found that there was no enforceable settlement agreement signed by all the parties. Star contends that the trial court's failure to allow parol evidence on the question of whether the parties had reached a settlement was reversible error. We disagree.
A compromise is an agreement to adjust the differences of two or more persons by mutual consent for preventing or ending a lawsuit. Anderson-Dunham, Inc. v. Hamilton, 564 So.2d 823, 828 (La. App. 1 Cir.), writ denied, 569 So.2d 963 (La.1990). LSA-C.C. art. 3071 requires a writing (or a recitation in open court) for a valid compromise agreement.[11] Jurisprudence allows for the writing and signatures to be contained in more than one letter or document. Id., 564 So.2d at 829; Michot v. Mose, 94-784 (La.App. 3 Cir. 10/17/94), 649 So.2d 441, 443, writ denied, 94-2828 (La.1/27/95), 650 So.2d 242. However, each letter that was exchanged between counsel in this case contained sections that were not agreed upon. Compromise is a bilateral contract. A letter by one of the parties setting forth their understanding of the agreement is not an agreement of the parties reduced to writing. Brasseaux v. Allstate Ins. Co., 97-0526 (La.App. 1 Cir. 4/8/98), 710 So.2d 826, 829.
The first letter from plaintiffs' counsel to Star's counsel conveyed plaintiffs' offer of settlement and specifically stated that the offer was conditioned upon the inclusion of certain language involving indemnity issues. The second letter from plaintiffs' counsel reiterated the original offer, clearly detailed plaintiffs' understanding that Star's counsel was in the process of communicating the offer to the defendants, and acknowledged that Star's counsel had *833 no authority to settle at that time. Star's counsel responded to the second letter by facsimile with the words, "This is not correct" written across the second letter. There was no reference as to what portion of the offer was incorrect. The third letter was from Star's counsel, directed to plaintiffs' counsel, outlining Star's understanding of plaintiffs' offer to settle, including indemnity provisions different from plaintiffs' outline of the settlement terms. In essence, the third letter was a counter-offer to settle.[12] The third letter also contained a blank signature line for plaintiffs' counsel to sign indicating that plaintiffs "agree to the above-described settlement." Plaintiffs' counsel responded to the third letter by marking through the indemnity provision paragraphs, writing "This is not true!" on the letter, and sending the third letter back to Star's counsel by facsimile without signing the line indicating that an agreement had been reached. Star's counsel sent the fourth and final letter to plaintiffs' counsel with an attached draft copy of a Receipt and Release document. However, the Receipt and Release document was never signed.
The trial court correctly ruled that there was no writing evidencing a meeting of the minds on the terms of settlement. The parties disagreed (then and now) over the indemnity issues. Compromises regulate only the differences that appear to be clearly comprehended by the intention of the parties. See LSA-C.C. art. 3073. Star's argument that parol evidence may be used to ascertain intent or to determine exactly what the differences were is not persuasive. The whole purpose of a writing is to avoid swapping a new dispute for an old one, avoid the necessity of credibility determinations, avoid litigation over the terms of a settlement, and avoid the need to surmise the parties' intent after-the-fact. See Sweet v. Iberia Parish School Board, 99-483 (La.App. 3 Cir. 11/3/99), 746 So.2d 256, 258, writ denied, 99-3414 (La.2/4/00), 754 So.2d 237; Scott v. Green, 621 So.2d 1, 3 (La.App. 4 Cir.), writs denied, 629 So.2d 1139 (La.1993).
The series of letters exchanged between counsel show that there was no meeting of the minds. Star's counter-offer contained in the third letter was never accepted, as plaintiffs' counsel did not sign the letter in the designated place. In fact, the evidence shows that the counter-offer was rejected outright. Not only was the signature line left blank, but the two paragraphs in the counter-offer dealing with indemnity issues were marked through, with the words "This is not true!" appearing next to the marked-through paragraphs. Obviously, the indemnity issue was never agreed upon and the counter-offer was rejected. Thus, there was no compromise evidenced by the letters.
Parol evidence should not be allowed to prove the existence of a settlement agreement. Parol evidence would only be relevant to prove what the parties intended to be covered by the agreement, or the scope of the settlement. See Smith v. Leger, 439 So.2d 1203, 1206 (La.App. 1 Cir. 1983). If plaintiffs' counsel had signed the third letter but marked through the indemnity paragraphs, then an argument could be made that parol evidence might have been relevant to prove the intent of the parties or the scope of the settlement. However, that was not the factual scenario before the trial court. We find no manifest error in the trial court's *834 refusal to allow parol evidence or in its conclusion that there was no meeting of the minds regarding settlement.
Star's first two assignments of error are without merit.

Jury Instructions Regarding UM Payments (Assignment of Error Numbers 3 & 4)
Star argues that the trial court erred in failing to instruct the jury regarding the settlements and payments made by the UM carriers to plaintiffs.[13] Star insists that the jury should have been informed that after the UM carriers paid $10,000,000 to the Collins plaintiffs and $1,200,000 to Jackson, the UM carriers "switched sides" to align themselves with the plaintiffs against Mike's Trucking and Daigle in order to pursue a judgment in excess of Star's $1,000,000 liability limits and obtain an assignment of rights for a bad faith claim against Star. Star characterizes the settlement as a "Mary Carter" agreement that should have been revealed to the jury. Plaintiffs and the UM carriers maintain that the UM payments were actually a "collateral source." A review of the record reveals that the jury was advised of the roles of the parties, but not about the UM payments or their amounts. Star characterizes this as legal error on the part of the trial court. We disagree.
An amount paid in settlement or tender should not be admitted into evidence, just as the amount of coverage under an insurance policy or the amount of a workers' compensation payment should not be communicated to the jury. See LSA-C.E. arts. 411, 413, and 414. While evidence of a settlement may be admissible to prove bias of a witness, the amount paid in the settlement is not admissible. Stockstill v. C.F. Industries, Inc., 94-2072 (La. App. 1 Cir.1995), 665 So.2d 802, 812-813, writ denied, 96-0149 (La.3/15/96), 669 So.2d 428; Calcagno v. Gonzales, 99-287 (La.App. 5 Cir. 10/13/99), 802 So.2d 643, 644. There is no evidence in the record to suggest that the UM payments resulted in bias on the part of any witness. The UM carriers were aligned with the plaintiffs by virtue of their cross-claims filed against Star, Mike's Trucking, and Daigle two years before the UM payments were made.
The trial court adequately instructed the jury regarding the alignment of the parties. The jury knew that the UM carriers were cross-claimants asserting claims against Mike's Trucking and Daigle, just as the plaintiffs were doing. The jury also knew that Star had intervened to assist Mike's Trucking and Daigle in defending their case. The proposed stipulated language that Star wanted read to the jury involved commenting on insurance payments made to plaintiffs. It would have been inappropriate for that information to be given to the jurors. A tortfeasor may not benefit because of the plaintiff's receipt of insurance payments from sources independent of the tortfeasor's contribution. See McCann v. ABC Ins. Co., 93-1789 (La.App. 4 Cir.1994), 640 So.2d 865, 873. Therefore, we find no error in the trial court's ruling regarding the jury instruction.
*835 Furthermore, we note that UM payments were made with a reservation of subrogation rights pursuant to a previously-filed cross-claim, and as such, cannot be characterized as a "Mary Carter" agreement. There is no element of secrecy in the settlement at issue; secrecy is the essence of a "Mary Carter" agreement.[14] The UM settlement agreement contains an acknowledgment of the UM carriers' subrogation rights which had already been disclosed in the UM carriers' cross-claims previously filed against Mike's Trucking and Daigle. It was clear that the UM carriers were aligned with the plaintiffs and had an interest in the plaintiffs' success because of the UM carriers' subrogation rights. There was no realignment of the parties. The jury understood that the UM carriers had a claim against Mike's Trucking and Daigle, and of course, Star was aware of the UM carriers' cross-claims.
Star's third and fourth assignments of error are without merit.

Damage Awards (Assignment of Error Numbers 5 & 6)
Star argues that the jury's award of $7,275,000 for general damages and $6,000,000 for future medical expenses/future support care was excessive and not supported by the evidence. However, Star was not cast in judgment or ordered to pay any amount of the damages awarded to plaintiffs and the UM carriers. The relief requested by Star, if granted, would affirmatively benefit Mike's Trucking and Daigle, parties that have neither appealed nor answered the appeal. It is well settled that where a party to a proceeding has failed to appeal or answer the appeal, the appellate court is without authority to modify or revise the judgment directly in favor of that party. See LSA-C.C.P. arts. 2082 and 2133; St. Bernard Police Jury v. Murla, 00-0132 (La.6/30/00), 761 So.2d 532, 533-534; Audubon Coin & Stamp Co. v. Alford Safe & Lock Co., (on rehearing), 230 So.2d 278, 281 (La.App. 1 Cir.1969).
Star's fifth and sixth assignments of error are without merit.

Reduction of the Judgments to Reflect Credits (Assignment of Error Number 7)
Star also argues that the judgments should reflect a credit or offset in favor of Mike's Trucking and Daigle for the amount of the UM payments and the workers' compensation ("WC") benefits received by plaintiffs before trial. Plaintiffs and the UM carriers argue that the UM and WC payments are subject to the "collateral source rule" and should not be deducted from the damage award. The UM carriers also argue that because they did not forfeit, waive, or assign their subrogation rights when the payments were made to the plaintiffs and they remained in the case, actively litigating their cross-claims against Mike's Trucking and Daigle, the tortfeasors are not entitled to a credit.
We agree with the premise that a tortfeasor is not entitled to a credit in the absence of evidence that the UM carrier waived its subrogation rights. Couvillion v. Shelter Mutual Ins. Co., 95-1186 (La. App. 1 Cir. 4/4/96), 672 So.2d 277, 283. However, yet again we are unable to further consider the issue of the credit, because to grant the relief requested by Star would require us to grant affirmative relief that would ultimately benefit two parties that have not appealed nor answered the appeal, Mike's Trucking and Daigle. *836 Therefore, for the same reasons outlined above, it is inappropriate to grant the relief requested by Star.
Star's seventh assignment of error is without merit.

Assignment of Rights Agreement (Assignment of Error Number 8)
Finally, Star argues that the trial court erred in refusing to require the plaintiffs and UM carriers to produce the assignment of rights agreement wherein they purportedly released Mike's Trucking and Daigle from the damage awards in exchange for an assignment of the tortfeasors' rights against Star for its alleged bad faith failure to settle the claim. However, the record reveals that the alleged assignment of rights agreement occurred after (in August 2003) the three June 2003 judgments were signed. The trial court held that the assignment of rights document was not relevant to this proceeding. We agree.
It is improper for us to consider any issue related to the alleged assignment of rights agreement since it arose after the rendition of the judgments that were appealed, and is therefore, not in the record on appeal. See LSA-C.C.P. art. 2164; Alerion Bank v. Louisiana Ins. Guar. Ass'n, 98-2897 (La.App. 1 Cir. 2/18/00), 753 So.2d 369, 372. We must decide the case upon the trial record, without considering subsequent events. Morehouse Lumber & Bldg. Material Co. v. Jacob & Walker, 144 So. 190, 192 (La.App. 2 Cir.1932), affirmed, 177 La. 76, 147 So. 504 (La.1933). While the assignment of rights agreement may very well be relevant in a future bad faith action, it is irrelevant for purposes of this appeal.[15]
Star's eighth assignment of error is without merit.

CONCLUSION
For the foregoing reasons, we affirm the three June 2003 judgments. Intervenor/appellant, Star Insurance Company, is ordered to pay all costs associated with this appeal.
AFFIRMED.
DOWNING, J., concurs.
NOTES
[1] LWCC voluntarily dismissed its intervention in both suits after a compromise agreement was reached between the parties.
[2] The compromise agreement between the Collins plaintiffs and the UM carriers specifically reserved "whatever rights, claims and interest the respective parties ... currently own[.]"
[3] Jackson's UM settlement was actually with the excess carrier, Twin City Fire Insurance Company.
[4] The stipulation signed by all parties on February 24, 2003, contained language recognizing the dismissal of Star from the main demand and the cross-claims, while specifically "reserving fully all rights, including legal interest" against the remaining defendants and cross-defendants"i.e., the insureds [Mike's Trucking and Daigle] under the Star policy."
[5] There were two separate judgments awarding money damages signed on June 16, 2003: one for the Collins case, also recognizing the UM Carriers' cross-claims against Mike's Trucking and Daigle, and one for the Jackson case, also recognizing Twin City Fire Insurance Company's cross-claim against Mike's Trucking and Daigle.
[6] Collins v. Mike's Trucking Company, Inc., 04-0062 (La.App. 1 Cir. 7/26/04) (unpublished).
[7] Collins v. Mike's Trucking Company, Inc., 04-2210 (La.11/19/04) (unpublished).
[8] The Order for Devolutive Appeal signed on July 30, 2004, grants an appeal to the intervenor, Star. Mike's Trucking and Daigle were not included in the order, and there is no other valid order for appeal in the record.
[9] Collins v. Mike's Trucking Company, Inc., 05-0238 c/w 05-0239 (La.App. 1 Cir. 5/3/05) (unpublished).
[10] The "law of the case" doctrine generally precludes review of an issue previously addressed by an appellate court, including decisions on writ applications and motions. However, the law of the case does not absolutely bar a court from reconsidering its prior decisions; rather it is discretionary. See Louisiana Land and Exploration Co. v. Verdin, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, writ denied 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997). We note that none of Star's assignments of error address its right to appeal and the plaintiffs and UM carriers did not answer the appeal. Therefore, we will not reconsider Star's right to appeal as an intervenor in the case.
[11] LSA-C.C. art. 3071 provides:

A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form. (Emphasis added.)
[12] An acceptance not in accordance with an offer is deemed to be a counter-offer, and the one first making the proposal cannot be presumed to have continued in his original intention. LSA-C.C. art.1943; Sweet v. Iberia Parish School Board, 99-483 (La.App. 3 Cir. 11/3/99), 746 So.2d 256, 259, writ denied, 99-3414 (La.2/4/00), 754 So.2d 237.
[13] The parties prepared a proposed joint stipulation read to the first panel of potential jurors during voir dire. The plaintiffs and UM carriers then withdrew the stipulation, contending the stipulation infringed on the collateral-source rule by informing the jury that plaintiffs had received insurance payments. The trial court agreed. None of the jurors on the first panel served on the jury. All other potential jurors heard the trial court's version of the alignment of the parties, which did not reveal the UM payments or the amounts.
[14] See Stockstill, 665 So.2d at 811-812, and Thibodeaux v. Ferrellgas, Inc., 97-1267 (La. App. 3 Cir.1998), 717 So.2d 668, 671-672, writs denied, 98-2321, 98-2325 (La.11/13/98), 731 So.2d 266, for a complete analysis and collection of authorities on "Mary Carter" agreements.
[15] Counsel indicated at oral argument that a bad faith action was in fact pending; however, that fact is outside the record and we are without authority to consider its effect. See Rogers v. Custom Built Garage, 01-0356 (La. App. 1 Cir. 3/28/02), 814 So.2d 693, 695.