746 So.2d 256 (1999)
Patricia SWEET, et al., Plaintiffs-Appellants,
v.
IBERIA PARISH SCHOOL BOARD, et al., Defendants-Appellees.
No. 99-483.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
Writ Denied February 4, 2000.
*257 Michael G. Daiy, Andre F. Toce, Lafayette, for Patricia Sweet.
Harold James Adkins, Baton Rouge, John William Penny, Jr., Lafayette, for Iberia Parish School Board.
Robert Leon Ellender, Lafayette, for National Union Fire, Ins.
BEFORE: THIBODEAUX, COOKS and WOODARD, Judges.
COOKS, J.
Five students at Jeanerette Senior High School attempted to "gang rape" a special education student after she participated in a band festivity. The minor's parents, represented by Andre Toce and Michael Daiy, eventually filed suit on her behalf against the school board, superintendent, principal and band director. The insurers for the parents of the five students, the school board, and its employees were later added as defendants. Various amended pleadings were filed, including plaintiffs' motion to amend the petition to include a claim arising under 42 U.S.C.A. §§ 1983 and 1988. The motion was denied on August 31, 1998 and trial was scheduled to commence on September 8, 1998. Prior to actually filing an emergency writ application with this Court, Michael G. Daiy wrote a letter dated September 1, 1998 to defense counsel extending an offer to settle the case for $80,000.00 plus court costs; and further noting "[i]t was imperative that [he] receive an answer immediately." During a follow-up telephone conversation, Daiy again expressed to defense counsel that immediate acceptance of the offer was required "in light of the significant work that needed to be done on the Supervisory Writ." In response, according to Daiy, defense counsel stated he would probably have a reply by noon the next day. No response to the offer was forthcoming by noon; but the lawyers did converse by telephone on that day. Daiy stated defense counsel indicated he was still waiting to hear from his clients but anticipated they would authorize him to settle the case for only $75,000.00. Daiy relates he told defense counsel his clients "could make whatever offer they like" but it was Mr. Toce's call on whether to accept. His authority, he reminded counsel, was limited to acceptance of the offer extended in the September 1, 1998 letter. He also advised counsel "that if the writs were granted prior to the time that the Plaintiff[s'] offer was accepted, that the cost of settlement would be greater."
On September 3, 1998, plaintiffs filed an emergency writ application with this Court. On the same day, Daiy received a call from defense counsel advising him to expect a fax by 9:00 a.m. the next day "with their offer." When defense counsel telephoned the next morning at 8:30 a.m. to alert Daiy that the $75,000.00 offer was on the way, Daiy reiterated to counsel he only had authority to settle for the original offer and "it was foolish to risk the settlement for $5,000.00." Foolish though it may have been, the fax read in pertinent part: "This is simply to advise that my clients have authorized the full sum of *258 $75,000.00 plus court costs in the above matter for a full, final and complete release ..." The fax was sent at 8:55 a.m. and received by Daiy at 8:56 a.m. Shortly after, defense counsel "called from his car phone and advised [Daiy] that [he] was going to send a letter accepting the $80,000.00 and court costs." Daiy told defense counsel that the $80,000.00 acceptance would arrive too late because the "counter-offer of $75,000.00 could possibly have the legal effect of nullifying the original offer." He also told counsel he could not accept the second offer without first receiving approval from plaintiffs. Nevertheless, defense counsel told Daiy "that once he sent that letter, he would consider the matter settled." The letter was faxed at 9:17 a.m. The attorneys of records were notified on the same morning that plaintiffs' application was granted.
Plaintiffs then filed an amended complaint subsequent to receiving our ruling granting their motion. Defendant, in response, filed a Motion to Enforce Settlement Agreement and Peremptory Exception of Res Judicata seeking dismissal of the amended complaint, with prejudice, and alleging "a valid and legally enforceable settlement had previously been reached between the parties." The trial court granted the motion. Plaintiffs now appeal this ruling assigning as error the following:
1. In finding the original offer of $80,000.00 remained open, considering the nullification of same by the counteroffer of $75,000.00, the time allowed for acceptance in the original offer, and the statements of Daiy that the original offer was revoked due to the counteroffer.
2. In finding defendants' acceptance did not contain additional conditions not set forth in plaintiffs' original offer.
ANALYSIS
La.Civ.Code art. 3071 provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
"[A] valid compromise can form the basis of a plea of res judicata." Brown v. Drillers, Inc., 93-1019, p. 5 (La.1/14/94); 630 So.2d 741, 747.
The requirement that a compromise "be either reduced into writing or recited in open court" serves as proof of the terms of the agreement and acquiescence therein. Felder v. Georgia Pacific Corp., 405 So.2d 521 (La.1981). The underlying reason for this requirement is obvious-it insures that both parties fully understand the nature of the offer avoiding the need to surmise the parties' intent "after-the-fact." However, the agreement need not be contained in one document. As explained in Brasseaux v. Allstate Ins. Co., 97-562, p. 5 (La.App. 1 Cir. 4/8/98); 710 So.2d 826, 829:
A written offer signed by the acceptor, even if the offer and the acceptance are contained in separate writings would be legally enforceable. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by LSA-C.C. art. 3071, has been perfected.
The only writing evidencing plaintiffs' offer is contained in a letter Mr. Daiy addressed to defense counsel on September 1, 1998. In relevant part, the letter recites:

*259 I have spoken with Andre' concerning your offer of $50,000.00. Based on Jay's representations to us, Andre' has authorized me to extend an offer to settle this matter for $80,000.00 plus court costs. It is imperative that I receive an answer immediately.

As mentioned, defendants responded by letter addressed to Daiy on September 4, 1998 at 8:55 a.m., stating:
This is simply to advise that my clients have authorized the full sum of $75,000.00 plus court costs in the above matter for a full, final and complete release of the Iberia Parish School Board, including, but not limited to Benny Parker, David Hills, Dave Cavalier, Jr. and LIGA from any claims arising out of the December 16, 1990 incident and the administrative hearings that followed, whether or not the claims have been asserted or raised in the litigation pending in the 16th Judicial District.
Ordinarily, an offer must be accepted in "toto; if declined it is at an end and cannot be revived by a subsequent assent." Leaman v. Putnam, App.1923, Orleans No. 8742. Thus, "an acceptance not in accordance with the terms of an offer is deemed to be a counteroffer;" and the one first making the proposal cannot be presumed to have continued in his original intention. La.Civ.Code art.1943. The trial judge clearly found "a counteroffer was made by defendants for $75,000 plus the court costs." However, he concludes nonetheless, that plaintiffs' original offer was still available for acceptance by defendants because "Daiy indicated [plaintiffs' original offer] would not be withdrawn by implication until such time as the Third Circuit Court granted the writs, if they granted it." In arriving at this conclusion, the trial judge factually found although Daiy rejected the counteroffer, he "at the same time" advised defense counsel "if the Third Circuit Court granted the writs before the $80,000 offer and costs was accepted, the cost of settlement would be greater." Daiy's remarks, he reasoned, "clearly by implication signaled [his] intent to keep the offer open."
After careful review, we find the actual sequence of the conversation referenced by the trial judge suggests the contrary. The trial judge mistakenly found Daiy's remarks regarding the granting of writs occurred on the same date on which the counteroffer was made. Daiy's caveat to defense counsel occurred, in fact, the day before he filed writs with this Court. As noted, he also told defense counsel on that date immediate acceptance of the offer was required "in light of the significant work that needed to be done on the Supervisory Writ." Daiy waited for defense counsel's reply by "noon" as promised; but no acceptance was forthcoming. He then filed the application. The only implication which may be drawn from Daiy's statement is that he desired a quick response to avoid having to prepare the application and incurring additional costs. To hold that he intended more, we think is unreasonable. Though we find the offer remained viable even after the application was filed, it did not survive the defense's counteroffer. When defendant's written counteroffer was transmitted by fax to Daiy, the original offer was at an end; and plaintiffs were not compelled to await defendants belated assent to it. Daiy told defense counsel he did not possess authority to waive the legal effects of the counteroffer or place the original offer back on the table.
Moreover, defendants' written acceptance of the original offer was transmitted at 9:17 a.m. on September 4, 1998. At 9:37 a.m. on the same morning our clerk's staff contacted the district judge to advise that the relief requested by plaintiffs' had been granted. That call was immediately followed by fax transmissions of the ruling to the attorneys of record. Even if we find the offer remained open until "writs were granted," that eventuality had already occurred when the acceptance was transmitted-it "arrived too late."

*260 DECREE
For the foregoing reasons, the judgment of the trial court granting defendants' Motion to Enforce Settlement Agreement and Peremptory Exception of Res Judicata is reversed and the case is remanded for further proceedings. All costs of this appeal are assessed against defendants-appellees.
REVERSED AND REMANDED.