759 So.2d 910 (2000)
Travis ANTHONY
v.
LIBERTY MUTUAL INS. CO., AAA Cooper Transportation, Inc. and Robert E. White.
No. 99-1730.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
*911 Archie P. Joseph, Archie P. Joseph, A P.L.C., Breaux Bridge, Louisiana, Counsel for Plaintiff/Appellant.
Michael E. Parker, Allen & Gooch, Lafayette, Louisiana, Counsel for Defendants/Appellees.
Court composed of HENRY L. YELVERTON, BILLIE COLOMBARO WOODARD and GLENN B. GREMILLION, Judges.
YELVERTON, Judge.
The issue in this case is whether the parties entered into a transaction or compromise to settle a suit based on an automobile accident. The trial judge held that there was a compromise and dismissed the suit. The plaintiff appealed. We reverse.
Travis Anthony, the plaintiff, filed a suit in City Court of Lafayette for damages after his pickup truck was hit by an eighteen-wheeler on Evangeline Thruway. The suit was against AAA Cooper Transportation, Inc., owner of the eighteen-wheeler; Robert E. White, the driver; and Liberty Mutual Insurance Company, the insurer (herein, collectively, Liberty Mutual). The accident happened in January 1998, suit was filed in May, and the case was scheduled for trial in early November.
In early November, the parties agreed to settle something for $3,000 and exchanged letters to the effect that the suit would be dismissed for $3,000. When Anthony received the settlement documents and a $3,000 check and saw that they required him to give up his claim for personal injuries as well as property damages and loss of use of his pickup, he refused to sign them and sent the check back. Liberty Mutual, believing that the exchange of letters constituted a transaction and compromise of all claims, filed a pleading styled "Motion to Compel Completion and Return of Settlement Documents," and asked that Anthony be ordered to show cause why the settlement documents should not be completed and returned.
The trial judge issued the rule and held a hearing. She ruled that the exchange of letters constituted an enforceable contract *912 binding Anthony to dismiss his suit in exchange for $3,000. She rendered and signed a judgment of dismissal of the lawsuit. In recognition that Anthony had not agreed to settle his personal injury claims, the judgment ordered "that a new settlement check be issued to the claimant deleting any reference that it was tendered in full and final settlement of any and all claims." She also ruled that she would not require him to sign the release of all claims. Nevertheless, the judgment ordered that the suit be "finally dismissed with full prejudice to all rights of plaintiff as against [all three defendants]."
Although Anthony's city court suit alleged only property damages, he maintains that he had extensive personal injuries and medical expenses. His limited demand in city court was to resolve his most immediate problem, his own transportation. He could have amended the suit in city court to add personal injury damages, or he could have dismissed without prejudice and filed in the district court. There was some indication that that was what he planned to do.
Before explaining our reasons for reversing, we will discuss the negotiations leading up to the settlement, because these negotiations help explain the exchange of letters. We will then discuss the trial judge's views as expressed at the hearing.

THE NEGOTIATIONS
Anthony's pickup was extensively damaged. He looked to Liberty Mutual for compensation for the property damage and complained about his prolonged loss of use. A number of letterssix by Anthony's attorney and five by Liberty Mutual or its attorneyare in the record concerning the property damage and loss of use claims. The alleged written compromise consists of two of these letters. In none of the eleven letters was the subject of personal injuries and related damages ever mentioned.
It was two months after the accident when Liberty Mutual notified Anthony that his vehicle, valued at $10,325.50, was deemed a total loss. Three weeks later, Anthony's attorney wrote Liberty Mutual complaining about the two-month loss of use and lack of transportation and making a formal demand for loss-of-use damages, including damages for inconvenience and mental anguish for the loss of use of the vehicle. The next correspondence was twelve days later: His attorney wrote Liberty Mutual confirming Liberty Mutual's telephoned refusal to pay Anthony for the loss of use and stated that suit would be filed.
After suit was filed, the next correspondence was on October 16. In this letter Anthony's attorney acknowledged the payment of some but not all of the collision damages and also acknowledged counsel's offer to settle for an additional $1,000. The letter advised that Anthony declined that offer and itemized what it would take for settlement. He offered to settle for $1,242.24 in property damage plus $5,000 for loss of use and inconvenience and emotional distress. Responding through its attorney, Liberty Mutual promised to send a check for the remaining property damage and offered to settle "the loss of use claim" for $1,500. This letter was dated October 21. Six days later, a counteroffer from Anthony was dispatched "to settle his loss of use claim" for $3,500. The next day, a two-line fax from Liberty Mutual offered to "split the difference" and "settle this case for $2,500."
They agreed to $3,000 on the telephone. Their confirmation letters apparently crossed in the mail. Liberty Mutual's counsel wrote this letter on November 4:
This letter will confirm our recent telephone conference wherein the above captioned matter settled for $3,000.00, plus the payment of court costs and outstanding property damage payment which you have already received.
Accordingly, I have requested the settlement check and will begin preparation of the necessary settlement documents, *913 and will forward same to you for execution and transmittal.
On the same day, Anthony's attorney wrote:
This letter will confirm settlement of the above captioned matter in the amount of $3,000.00 plus all court cost to be paid by Liberty Mutual Insurance Company. I will prepare a Motion to Dismiss indicating same upon receipt of the settlement check.
My secretary indicated to me that you would advise the court that this matter has been settled and should be taken off the docket. Please confirm this with my office.
The settlement draft, a Release of All Claims, and a Judgment of Dismissal were dispatched to Anthony on November 10, with this letter.
Please find enclosed herein my client's settlement draft in the amount of $3,000.00 made payable to Archie P. Joseph and Travis Anthony, duplicate originals of Release of All Claims, and a Judgment of Dismissal. Please have your client execute the settlement documents and return a fully executed original of same to me. Additionally, please sign the Judgment of Dismissal and forward to the Clerk for filing, requesting that I be provided with a certified copy of same.
As is customary, please withhold negotiation of the settlement draft until all documents are executed.
The Release of All Claims extended specifically to personal injuries including "loss of wages" and "medical expenses." The back of the check also required a release of any and all claims. The proposed Judgment of Dismissal prepared by Liberty Mutual stated that "all issues in the above entitled and numbered cause have been compromised."
The inclusion of personal injury claims in the three documents forwarded to complete the settlement was not the intent of the agreement to dismiss upon the payment of $3,000, according to counsel for Anthony. Counsel would not let Anthony sign any of the documents. All, including the checks, were sent back. Liberty Mutual filed the rule to compel the settlement, and the hearing was conducted which we will now discuss.

THE HEARING
The trial judge was under the impression that Anthony was planning to file another suit in the district court, where the jurisdictional limits were higher, for the personal injury related claims. The trial judge focused on the agreement to dismiss the city court suit for $3,000, concluding that dismissal of that suit and the $3,000 payment were the reciprocal obligations making up the transaction and compromise. She stated that the issue of whether the judgment in her court was res judicata, and therefore precluded the demand for personal injuries in the district court, would have to be tested at the district court level. Anthony countered with the argument that the focus of the issue regarding a transaction and compromise was whether all claims were intended to be released, but the trial judge believed that the focus was on whether the suit was intended to be dismissed. The trial judge told Anthony that she could cure his concerns by not ordering him to sign the releases and that after he dismissed the city court suit, the district court, if he filed there, would decide what the settlement encompassed. The trial judge said:
Once you have a___ a___ a compromise is writing, all I have authority to do is enforce that compromise and that compromise says: "This matter will be dismissed upon payment of Three Thousand Dollars ($3,000.00)."

She ordered that the suit be dismissed and that the defendants pay the plaintiff $3,000. As a concession for Anthony's benefit, the trial judge ordered that the language "settlement of bodily injury" be deleted from the back of the new check to be issued for $3,000. She added that that *914 would make it clear that the settlement was only designed to settle this case, not any other case that the plaintiff might have the right to file.

OPINION
The issue is whether the differences between the parties as to all of the rights and claims of Anthony arising out of the January 1998 accident were comprehended by them in a compromise. La.Civ. Code arts. 3071 and 3073. The dispute is whether a compromise was completed by the exchange of letters. Anthony argues that loss-of-use property damage was all they had ever talked about and all he intended to settle. The defendant was thinking all damages were to be settled, as evidenced by its inclusion of personal injury damages in its Release of All Claims and on the back of the settlement check. The trial judge evidently reached the factual conclusion that personal injury damages were not included, because she ordered that Anthony did not have to sign the release instruments.
A compromise is governed by the same general rules of construction applicable to contracts. Ortego v. State, DOTD, 96-1322 (La.2/25/97); 689 So.2d 1358. Because a compromise extends only to those matters the parties intended to settle, the scope of the transaction cannot be extended by implication. Article 3073; Brown v. Drillers, Inc., 93-1019 (La.1/14/94); 630 So.2d 741. When a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Ortego, 689 So.2d 1358. A compromise is valid if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached. Pat O'Brien's v. Franco's Cocktail Prod., Inc., 615 So.2d 429 (La.App. 4 Cir.) writ denied, 617 So.2d 909 (La.1993). There can be no binding compromise where the terms of the release from liability are unknown. Townsend v. Square, 94-0758 (La.App. 4 Cir. 2/29/94); 643 So.2d 787.
Moreover, La.Civ.Code art.1947 states: "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." In the present case, the parties never intended to be bound by the exchange of letters as the embodiment of their contract. The compromise was not complete until the parties signed the formal documentation. Carter v. Huber & Heard, Inc., 95-142 (La.App. 3 Cir. 5/31/95); 657 So.2d 409, writ denied, 95-1662 (La.10/6/95); 661 So.2d 471. Because the formal documentation showed that Liberty Mutual was thinking of one thing and Anthony was thinking of another, Anthony refused to sign. A compromise never came into existence.
Liberty Mutual's own actions belie its contention that a completed contract was formed by the exchange of letters. It was not the letter agreement that it sought to enforce; it was the Release of All Claims that it sought, by rule, to compel Anthony to sign and return, when it filed its "Motion to Compel Completion and Return of Settlement Documents." This proves that Liberty Mutual regarded its settlement as what was written in the Release of All Claims, not as what was written in the letters. This is further demonstrated by the language in Liberty Mutual's letter that the "necessary settlement documents" would be forwarded for execution and its instruction in the letter enclosing the settlement documents to "withhold negotiation of the settlement draft until all documents are executed."
Anthony refused to execute the Release of All Claims because he did not agree with it. Therefore, there was never a meeting of the minds, and there never was a contract.
We find that Liberty Mutual failed to prove a compromise. The judgment is reversed, and the matter is remanded for *915 further proceedings. Defendants will pay costs of this appeal.
REVERSED AND REMANDED.